ORDERED.

**Dated:  April 21, 2016**

Jerry A. Funk
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## <u>JACKSONVILLE DIVISION</u>

| | | |
|---|---|---|
| In re | ) | |
| | | |
| LIFE CARE ST. JOHNS, INC., | ) | Case No.:  3:16-bk-1347-JAF |
| a Florida not-for-profit corporation | | |
| doing business as GLENMOOR,[1] | ) | Chapter 11 |
| | | |
| Debtor. | ) | |
| | | |
| _____ | ) | |

## ORDER (A) AUTHORIZING THE SALE
## OF SUBSTANTIALLY ALL OF THE DEBTOR'S
## ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND
## INTERESTS; (B) APPROVING BIDDING PROCEDURES AND
## OVERBID PROTECTIONS IN CONNECTION WITH SALE OF ASSETS;
## (C) APPROVING THE FORM AND MANNER OF NOTICE; AND (D)
## APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT
## <u>OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

This chapter 11 case came before the Court upon the motion filed by debtor, Life Care St. Johns, Inc., a Florida not-for-profit corporation doing business as Glenmoor ("Glenmoor" or "Debtor"), seeking the entry of an order (a) authorizing Debtor to sell substantially all of its assets (except the 11 acre undeveloped parcel adjacent to the operational facilities) free and clear of liens, claims and interests; (b) approving bidding

---

[1] The Federal Employer Identification Number for the Debtor is 59-3474627.  The address of the Debtor is 235 Towerview Drive, St. Augustine, Florida, 32092.

procedures and overbid protections in connection therewith; (c) approving the form and manner of notice; and (d) approving assumption and assignment procedures with respect to executory contracts and unexpired leases (the "Motion") [Docket No. 9]; the Court having reviewed the Motion, and conducted a hearing to consider (a) approval of the bidding procedures and overbid protections in connection with the sale of substantially all assets of the Debtor (except the 11 acre undeveloped parcel adjacent to the operational facilities); (b) the form and manner of notice of the relief sought in the Motion; (c) the procedures for assumption and assignment of executory contracts and unexpired leases; and (d) the scheduling of a subsequent hearing to approve the sale of substantially all assets of the Debtor (except the 11 acre undeveloped parcel adjacent to the operational facilities) free and clear of liens, claims and interests (the "Hearing"); and having heard statements of counsel and any evidence presented in support of the relief requested in the Motion at the Hearing; and it appearing that due and proper notice of the Motion was provided; and it appearing that the relief requested in the Motion is in the best interests of Glenmoor, its estate, and all other parties-in-interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon, the Court makes the following findings of fact and conclusions of law:

**Findings of Fact and Conclusions of Law:**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).

Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.     Glenmoor has articulated good and sufficient reasons for (a) the approval of the Bidding Procedures, attached hereto as **Exhibit A** and incorporated herein by reference, (b) the granting of a break-up fee (the "Break-Up Fee") and expense reimbursement (the "Expense Reimbursement") to LCS Glenmoor, LLC ("LCS") in its role as Stalking Horse Bidder, as provided herein, in the Stalking Horse APA,[2] and in the Bidding Procedures, (c) the approval of the proposed procedures for the assumption and assignment of the Assumed Contracts (the "Assumption and Assignment Procedures"), and (d) the approval of the form and manner of notice (the "Contract Assumption Notice"), attached hereto as **Exhibit B**, of the deadline to object to the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Contracts") and for determining the cure amounts in connection therewith (the "Cure Amounts").

3.     Notice of the Motion was good and sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures or any other form of relief granted herein is or shall be required.

4.     All amounts, if any, to be paid by Glenmoor to LCS pursuant to the Stalking Horse APA, including the Break-up Fee and Expense Reimbursement, shall be paid in accordance with the terms and conditions of the Stalking Horse APA, and (a) are reasonable and appropriate in light of the size and nature of the proposed Sale, the commitments that have been made and the efforts that have been and will be expended by LCS, (b) are

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

necessary to induce LCS to continue to pursue the Sale and to continue to be bound by the Stalking Horse APA, (c) are fair, reasonable and equitable in all respects under the circumstances, (d) were negotiated by the parties at arm's length and in good faith, and (e) represent an exercise of Glenmoor's sound business judgment.  Further, all such amounts to be paid to LCS, including the Break-up Fee and Expense Reimbursement, are actual and necessary costs and expenses of preserving Glenmoor's estate within the meaning of §§ 503(b) and 507(a)(2) of the Bankruptcy Code.

5.    The Break-up Fee and Expense Reimbursement induced LCS to submit a bid that will serve as a minimum floor bid on which Glenmoor, its creditors and other bidders may rely.  LCS has provided a material benefit to Glenmoor and its creditors by increasing the likelihood that the best possible price for the Purchased Assets will be received.

6.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Purchased Assets.

7.    The transactions contemplated by the Stalking Horse APA are undertaken by LCS without collusion and in good faith, as that term is defined in § 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the transactions (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such sale are duly and properly stayed pending such appeal.

8.    Neither Glenmoor nor LCS have engaged in any action or inaction that would cause or permit the transactions contemplated by the Stalking Horse APA to be avoided or costs or damages to be imposed under § 363(n) of the Bankruptcy Code.  The consideration

- 4 -

provided by LCS for the Purchased Assets under the Stalking Horse APA is fair and reasonable and the sale may not be avoided under § 363(n) of the Bankruptcy Code.

9.      The Motion and the Contract Assumption Notice are reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the intended assumption and assignment of their executory contracts or unexpired leases, any Cure Amounts relating thereto and the Assumption and Assignment Procedures.

**It Is Ordered:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      That portion of the Motion requesting (a) the scheduling of an Auction, (b) the scheduling of a Sale Hearing, and (c) the approval of the form and manner of notice of the Auction and Sale (the "Sale Notice") is granted.  The Auction shall be held before the Honorable Jerry A. Funk, in Courtroom 4D, United States Courthouse, 300 North Hogan Street, Jacksonville, Florida on **June 2, 2016** at **1:30 p.m.**

3.      The Bidding Procedures are hereby approved and shall govern the sale process.  Bids that do not conform to the Bid Procedures will not be considered for participation in the Auction.  Glenmoor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      The deadline to submit a Qualified Bid (as defined in the Bidding Procedures) shall be May 30, 2016 (the "Bid Deadline").

5.      As further described in the Bidding Procedures, Glenmoor shall conduct the Auction if a Qualified Bid, other than the LCS bid under the Stalking Horse APA, is received prior to the Bid Deadline.  The Debtor shall serve notice of the time and place for the

Auction on all Qualified Bidders, including LCS, in accordance with the Motion.  If no timely, conforming Qualified Bids other than the LCS bid under the Stalking Horse APA are submitted by the Bid Deadline, the Auction will not be held, LCS will be the Successful Bidder, and Glenmoor will seek authority to consummate the transactions contemplated by the Stalking Horse APA with LCS at the Sale Hearing.

6.      Any obligations of Glenmoor contained in the Stalking Horse APA that are intended to be performed prior to entry of an order by this Court approving the sale, are hereby authorized and are fully enforceable as of the date of entry of this Order.

7.      The Court will hold the Sale Hearing in Courtroom 4D, United States Courthouse, 300 North Hogan Street, Jacksonville, Florida on **June 2, 2016** at **1:30 p.m.**, immediately following the Auction.

8.      Objections, if any, to the Sale of the Purchased Assets must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Bankruptcy Rules, (d) be filed with the Court electronically by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, so as to be actually received no later than 5:00 p.m. (Eastern Time) on May 30, 2016 (the "Sale Objection Deadline"), provided, however, that objections to the assumption and assignment of the Assumed Contracts and the proposed Cure Amounts should be filed in accordance with the Assumption and Assignment Procedures set forth herein.

9.      The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion of any objection to the Motion and the consummation and performance of the Sale, and shall be deemed to constitute such party's consent to the Sale and the transactions and documents related thereto.

10.    The Break-up Fee, Expense Reimbursement and other bid protections as set forth in the Stalking Horse APA are hereby approved, and any and all objections to the bid protections that were not consensually resolved at or before the Hearing are hereby overruled.

11.    Glenmoor is authorized and directed to pay any and all amounts owing to LCS in accordance with the terms of the Stalking Horse APA, including the Break-up Fee and Expense Reimbursement, without further order of the Court.

12.    If LCS becomes entitled to payment from Glenmoor under the Stalking Horse APA for, among other things, the Break-up Fee or the Expense Reimbursement, then LCS shall be, and hereby is, granted an allowed administrative claim under § 503(b)(1) of the Bankruptcy Code in Glenmoor's chapter 11 case in an amount equal to such amounts and, if applicable, the Break-up Fee and Expense Reimbursement shall be paid in accordance with the terms of this Order.

13.    LCS has agreed to assume all active Residence and Care Contracts subject to the provisions of Section 7.9 of the Stalking Horse APA.  Any Qualified Bid must likewise provide for the assumption of the active Residence and Care Contracts and all Entrance Fee refund liabilities coming due after February 28, 2014.  With respect to all other executory contracts and unexpired leases, the following Assumption and Assignment Procedures shall govern:

(a)    Initial Contract Designations.  On or before April 26, 2016, Glenmoor shall file with this Court and serve on each non-debtor counterparty to an executory contract or unexpired lease with Glenmoor (each, a "Non-Debtor Counterparty") that Glenmoor may assume and assign to LCS or the Successful Bidder, a notice of assumption and assignment of executory contracts and unexpired leases in substantially the form of the Contract Assumption Notice attached hereto as **Exhibit B**.

Glenmoor shall attach to the Contract Assumption Notice a list identifying the Non-Debtor Counterparties to the Assumed Contracts and the corresponding Cure Amounts under the Assumed Contracts. In addition, Glenmoor shall serve a copy of the Contract Assumption Notice on a Non-Debtor Counterparty's counsel of record, if any, as of the date of the Contract Assumption Notice ("Counsel of Record").

(b)     Information in Assumption Notice.  For each Assumed Contract, on the Contract Assumption Notice, Glenmoor shall either (i) indicate the proposed Cure Amounts relating to such Assumed Contract or (ii) provide an amount representing the proposed Cure Amounts for multiple Assumed Contracts with the same Non-Debtor Counterparty, subject, upon request, to providing greater detail to a Non-Debtor Counterparty to identify on a contract-by-contract basis the proposed applicable Cure Amounts to the extent reasonably available.  On a Contract Assumption Notice, Assumed Contracts may be listed individually or in groups of agreements with the Non-Debtor Counterparty, as long as the Non-Debtor Counterparty is provided with sufficient information to identify the contracts to be assumed and assigned.  The Contract Assumption Notice also may identify any additional proposed terms or conditions of assumption and assignment.

(c)     If a party other than LCS is the Successful Bidder, or if a transaction other than the Sale to LCS is consummated for the Purchased Assets in accordance with the Bidding Procedures, then these Assumption and Assignment Procedures may be modified if necessary by further order of this Court.

(d)     Contract Removal Designations.  In accordance with the Stalking Horse APA or the APA executed by the Successful Bidder, LCS or the Successful Bidder may remove executory contracts and unexpired leases as agreements to be assumed by Glenmoor and assigned to LCS or the Successful Bidder pursuant to the Stalking Horse APA or the APA executed by the Successful Bidder (the "Removed Contracts") until the earlier of Closing or three (3) Business Days following entry of a final order determining all Cure Amounts and adequate assurance (if any) required for such contract.  Upon notice by LCS or the Successful Bidder to Glenmoor of a removal of a specific Removed Contract, or a group thereof, Glenmoor shall serve a notice (a "Removal Notice") on each of the Non-Debtor Counterparties to such Removed Contracts and their Counsel of Record, indicating that the notice recipient is a Non-Debtor Counterparty to one or more executory contracts or unexpired leases with Glenmoor that Glenmoor no longer intends to assume and assign to LCS or the Successful Bidder in connection with the Sale.

(e)     Section 365 Objections.  Objections, if any ("§ 365 Objections"), to the proposed Cure Amounts, or to the proposed assumption and assignment of the Assumed Contracts, including objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, LCS or the Successful Bidder for purposes of § 365(c)(l) of the Bankruptcy Code, must (a) be in writing; (b) state with specificity the nature of such objection and the alleged Cure Amounts (with appropriate documentation in support thereof); (c) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of this Court, and (d) be filed with the Court and served on the Key Parties so as to be received no later than the deadline to file objections to the Sale **[May 30, 2016]**.

(f)     Section 365 Hearing.   If any of Glenmoor, the Non-Debtor Counterparty or LCS or the Successful Bidder determines that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Assumed Contract and/or the Cure Amounts will be determined by the Court at the Sale Hearing, unless Glenmoor, LCS or the Successful Bidder and the Non-Debtor Counterparty to the Assumed Contract in dispute agree otherwise.  If the Court determines at a § 365 Hearing that the Assumed Contract cannot be assumed and assigned, or establishes Cure Amounts that LCS or the Successful Bidder is not willing to pay, then such executory contract or unexpired lease shall no longer be considered an Assumed Contract.

(g)     Consent to Assumption and Assignment.   Any Non-Debtor Counterparty to an Assumed Contract who fails to file a timely § 365 Objection to the proposed Cure Amounts or the proposed assumption and assignment of an Assumed Contract by the § 365 Objection Deadline is deemed to have consented to (i) such Cure Amounts, (ii) the assumption and assignment of such Assumed Contract, (iii) the related relief requested in the Sale Motion and (iv) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Amounts, the assumption and assignment of the Assumed Contract, adequate assurance of future performance, the relief requested in the Sale Motion, whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, LCS or the Successful Bidder for purposes of § 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against Glenmoor, its estate and LCS or the Successful Bidder with respect to such party's executory contract(s) or unexpired lease(s).

(h)     Resolution of Assumption/Assignment Issues.   If the Non-Debtor Counterparty to an Assumed Contract fails to timely assert a § 365 Objection as described in subparagraph (f) above, or upon the resolution of any timely § 365 Objection by agreement of the parties or order of the Court approving an assumption and assignment, such Assumed Contract shall be deemed to be assumed, without the need for provision of adequate assurance by Glenmoor, and assigned to LCS or the Successful Bidder and the proposed Cure Amount related to such Assumed Contract shall be established and approved in all respects.

(i)     Conditions on Assumption and Assignment.   Glenmoor' decision to assume and assign the Assumed Contracts is subject to Court approval and consummation of the Sale.   Accordingly, subject to the satisfaction of conditions above to address any cure or assignment disputes, Glenmoor shall be deemed to have assumed and assigned to LCS or the Successful Bidder each of the Assumed Contracts as of the date of and effective only upon the Closing, and absent such Closing, each of the Assumed Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by Glenmoor under the Bankruptcy Code.   Assumption and assignment of the Assumed Contracts also is subject to the rights of LCS or the Successful Bidder set forth in subparagraph (d) above. LCS or the Successful Bidder shall have no rights in and to a particular Assumed Contract until such time as the particular Assumed Contract has been identified by LCS or the Successful Bidder as an Assumed Contract and is assumed and assigned in accordance with the procedures set forth herein.

14.     Notice of the Motion, constitutes good, sufficient and timely notice, and no other or further notice shall be required, other than service of a copy of this Order by first class mail postage prepaid upon the Notice Parties.

15.     Notwithstanding Rules 6004(h), 6006(d), 7062, or 9041 of the Federal Rules of Bankruptcy Procedure or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of this Order.

16.     The Court shall retain jurisdiction over any matter or dispute arising from or

relating to the implementation of this Order

American Legal Claim Services is directed to serve copies of this Order on interested parties
within 3 days of the entry of this Order.

**Exhibit A – Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| | | |
| LIFE CARE ST. JOHNS, INC., | ) | Case No.:  3:16-bk-1347-JAF |
| a Florida not-for-profit corporation | | |
| doing business as GLENMOOR,[3] | ) | Chapter 11 |
| | | |
| Debtor. | ) | |
| | | |
| _____ | ) | |

**BIDDING PROCEDURES**

These Bidding Procedures (the "Bidding Procedures") set forth the process by which

Life Care St. Johns, Inc., a Florida not-for-profit corporation doing business as Glenmoor

("Glenmoor" or  "Debtor") is authorized to conduct the sale (the "Sale") by auction (the

"Auction") of substantially all of Glenmoor's assets, defined as the "Purchased Assets" in the

Stalking Horse APA, dated March 21, 2016 (as may be amended) (the " Stalking Horse

APA") between Glenmoor, as seller, and LCS Glenmoor, LLC ("LCS"), as buyer, or such

other Asset Purchase Agreement submitted at or prior to the Auction and subsequently

determined by the Debtor to be the highest and best offer for the Purchased Assets and

approved by the Bankruptcy Court.  Capitalized terms used herein but not otherwise defined

shall have the meanings set forth in the Stalking Horse APA.

These Bidding Procedures have been approved by an order dated April ____, 2016

(the "Sales Procedures Order"), entered by the United States Bankruptcy Court for the

---

[3]  The Federal Employer Identification Number for the Debtor is 59-3474627.  The address of the Debtor is 235 Towerview Drive, St. Augustine, Florida, 32092.

Middle District of Florida, Jacksonville Division (the "Bankruptcy Court"), in which the

Chapter 11 bankruptcy case, Case No. 3:16-bk-1347-JAF of Glenmoor is pending.

**Assets to be Sold**

1.    These Bidding Procedures set forth the terms by which prospective bidders, if

any, may qualify for and participate in the Auction, thereby competing to make the highest

and best offer for all or substantially all of the Purchased Assets, as identified in further detail

and defined in the Stalking Horse APA.

**Obtaining Due Diligence Access**

2.    Any entity (other than LCS) interested in the Purchased Assets (a "Potential

Bidder") must deliver an executed confidentiality agreement (each, a "Confidentiality

Agreement") reasonably acceptable to Glenmoor and containing terms in the aggregate no

less favorable to Glenmoor in any material respect (other than with respect to the effective

periods and the non-disclosure and non-solicitation provisions contained therein, all of which

terms shall be commercially reasonable) than those contained in the confidentiality

agreement by and between LCS and Glenmoor.  After Glenmoor's receipt of an executed

Confidentiality Agreement, Glenmoor shall provide each Potential Bidder reasonable due

diligence information, as requested, as soon as reasonably practicable after such request. The

due diligence period will end on May 30, 2016 (the "Bid Deadline").

3.    In connection with the provision of due diligence information to Potential

Bidders, Glenmoor shall not furnish any confidential information relating to Glenmoor, the

Purchased Assets, or the Sale to any person except a Potential Bidder or such bidder's duly-authorized representatives to the extent provided in the Confidentiality Agreement.

4.      Glenmoor shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

**Bid Requirements**

5.      To participate in the Auction, prior to the Bid Deadline, a Potential Bidder (other than LCS) must deliver to Glenmoor a written irrevocable offer that must:

> (a)      be in writing;
>
> (b)      authorize Glenmoor to provide the bid to LCS and the Bond Trustee ;
>
> (c)      equal or exceed $25,400,000, which is the sum of the following: (i) the Sales Proceeds of $24,450,000; (ii) the Break-up Fee of $700,000; (iii) the Expense Reimbursement of $150,000; and (iv) the minimum bid increment of $100,000 (such aggregate sum, the "Minimum Bid Amount") (all of which must be in cash, and/or the assumption of administrative expense liabilities, except in the event of a credit bid by the Bond Trustee);
>
> (d)      constitute a good faith, bona fide offer to purchase all of the Purchased Assets, and to assume the Assumed Liabilities, including the Residence and Care Contracts of current residents and all Entrance Fee refund obligations arising after February 28, 2014, and the consummation of the transactions contemplated in the Stalking Horse APA.
>
> (e)      be accompanied by a clean and duly executed copy of the Stalking Horse APA and the documents set forth as exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the Stalking Horse APA executed with LCS, which may not be on terms less favorable in the aggregate to Glenmoor or inconsistent with these Bidding Procedures;

(f)     identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required;

(g)     not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval (other than court approval and issuance of licenses necessary to operate Glenmoor), or (iii) the outcome or completion of a due diligence review by the Potential Bidder; and

(h)     must remain irrevocable until 48 hours after the Auction.

6.     In addition to the above, each Potential Bidder must:

(a)     provide Glenmoor and the Bond Trustee, on or before the Bid Deadline, with sufficient and adequate information to demonstrate, to the satisfaction of Glenmoor (in consultation with the Bond Trustee), that such Potential Bidder has the financial wherewithal and ability to consummate the acquisition of the Purchased Assets, and the assumption of the Assumed Contracts, including current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring Glenmoor, current audited financial statements or other financial information of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure acceptable to the Debtor, demonstrating such Potential Bidder's ability to timely close the proposed transaction and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed and assigned;

(b)     fully disclose the identity of each entity that will be bidding for or purchasing the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

(c)     on or before the Bid Deadline, submit a cash deposit equal to $1,375,000 by wire transfer of immediately available funds to an account or accounts established pursuant to an escrow agreement (the "Good Faith Deposit"); and

- 4 -

(d)    not be entitled to any break-up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

7.    Bids fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders."  Within twelve hours after receipt of a Qualified Bid, Glenmoor shall provide such Qualified Bid to the Bond Trustee and LCS.  Within one (1) Business Day after the Bid Deadline, Glenmoor, shall determine, in consultation with the Bond Trustee, which Potential Bidders are Qualified Bidders and will notify the Potential Bidders and LCS whether their bids constitute Qualified Bids so as to enable such Qualified Bidders to bid at the Auction.  The Stalking Horse APA submitted by LCS shall be deemed a Qualified Bid.

**Bid Deadline**

8.    Binding bids must be actually received by Glenmoor no later than 5:00 p.m. (prevailing Eastern Time) on May 30, 2016 (the "Bid Deadline").

**Evaluation of Qualified Bids**

9.    Prior to the Auction, Glenmoor, in consultation with the Bond Trustee, shall evaluate Qualified Bids and identify the Qualified Bid that is, in Glenmoor's judgment, the highest and best bid (the "Starting Bid").  Within 24 hours of such determination, Glenmoor shall notify LCS as to which Qualified Bid is the Starting Bid.  Glenmoor shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

**No Qualified Bids**

10.     If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse APA will be deemed the Successful Bid (as defined herein), and Glenmoor will pursue entry of an order by the Bankruptcy Court approving the Stalking Horse APA and authorizing the sale of the Purchased Assets to LCS.

**Auction**

11.     If one or more Qualified Bids are received by the Bid Deadline, then Glenmoor shall conduct an auction (the "Auction") with respect to the Purchased Assets. The Auction shall be conducted on **June 2, 2016** at **1:30 p.m.** before and at the direction of the Honorable Jerry A. Funk, United States Bankruptcy Judge, in the Bryan Simpson United States Courthouse, Room 4D, 300 North Hogan Street, Jacksonville, Florida 32202, if one or more Qualified Bids are received by the Bid Deadline.

12.     The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

> (a)     the Auction will be conducted openly;
>
> (b)     only the Qualified Bidders, including LCS, shall be entitled to bid at the Auction;
>
> (c)     the Qualified Bidders, including LCS, shall appear in person at the Auction, or through duly-authorized representatives;
>
> (d)     only such authorized representatives of each of the Qualified Bidders, LCS, Glenmoor, the Bond Trustee, and their respective advisors shall be permitted to attend the Auction;
>
> (e)     bidding at the Auction shall begin at the Starting Bid;

(f)    subsequent bids at the Auction, including any bids by LCS, shall be made in minimum increments of $100,000;

(g)    LCS shall receive a credit equal to the amount of the Break-up Fee and the Expense Reimbursement when bidding at the Auction;

(h)    each participating bidder will be informed of the terms of the previous bids;

(i)    the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

(j)    each bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale and is not in violation of § 363(n) of the Bankruptcy Code; and

(k)    absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider bids made after the Auction is closed.

**Acceptance of the Successful Bid**

13.    Upon the conclusion of the Auction (if the Auction is conducted), Glenmoor, in the exercise of its reasonable, good-faith business judgment and after consulting with the Bond Trustee, shall identify the highest and best bid (the "Successful Bid").  In determining which Qualified Bid is the Successful Bid, the Debtor may consider, after consultation with the Bond Trustee (unless the Bond Trustee chooses to bid at the Auction), among other things: (1) the amount of the purchase price; (2) the form of consideration being offered; (3) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (4) the net benefit to the Debtor's estate and all of its constituents, and the effect of the Sale Transaction on the residents of the Debtor; (5) the extent of such Qualified Bidder's background and experience operating a CCRC; (6) licensure qualification issues; and (7) any other facts, including but not limited to, all other non- economic factors.  Before the conclusion of the Auction, the Debtor shall inform each of the Bidders of the decision

regarding designation of the Successful Bid, and the Qualified Bidder who submitted such Successful Bid shall be required to execute a definitive asset purchase agreement at such time. The Debtor shall present the Successful Bid to the Bankruptcy Court for approval at the Sale Hearing.

14.     The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder."  The Successful Bidder and Glenmoor shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

15.     The Bankruptcy Court will conduct a hearing to approve the Sale to the Successful Bidder on **June 2, 2016** at **1:30 p.m.**, immediately following the Auction. Glenmoor will request the Bankruptcy Court make certain findings regarding the Auction, including, among other things, that (a) the Auction was conducted and the Successful Bidder was selected in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures, and (d) consummation of the Sale contemplated by the Successful Bid will provide the highest and best value for the Purchased Assets, and is in the best interests of Glenmoor and its estate; *provided, however*, that the Successful Bid may be for a subset of the Purchased Assets if it otherwise constitutes a Qualified Bid (including that it satisfies the requirements of these Bidding Procedures) and is the highest and best bid as determined by Glenmoor in accordance with these Bidding Procedures.

16.     If an Auction is held, Glenmoor shall be deemed to have accepted a Qualified Bid only when (a) such bid is declared the Successful Bid at the Auction and (b) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon

approval by the Bankruptcy Court of the Successful Bid and the entry of an order approving such Successful Bid.

**Designation of Back-Up Bidder**

17.     If for any reason the Successful Bidder fails to consummate the purchase of the Purchased Assets within the time permitted after the entry of the order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best bid for the Purchased Assets (the "Back-Up Bidder"), as determined by Glenmoor, after consultation with the Bond Trustee, at the conclusion of the Auction and announced at that time to all the bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best bid, and Glenmoor and the Back-Up Bidder will be authorized, but not required, to consummate the Sale with the Back-Up Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least 24 hours advance notice, which notice will be filed with the Bankruptcy Court.

**Break-Up Fee and Expense Reimbursement**

18.     If the sale closes with an entity other than LCS, Glenmoor shall be obligated to pay to LCS from the proceeds of such sale, by wire transfer in immediately available funds to an account designated by LCS, all amounts due to LCS, including the Break-up Fee and the Expense Reimbursement, in each instance in accordance with the applicable provisions of the Stalking Horse APA.

**Return of Good Faith Deposit**

19.     The Good Faith Deposit of the Successful Bidder shall, upon consummation of the purchase of the Purchased Assets, be credited to the purchase price paid for the Purchased Assets.   If the Successful Bidder fails to consummate the purchase of the Purchased Assets (other than as a result of a material breach of the Stalking Horse APA by Glenmoor), then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, Glenmoor.

20.     The Good Faith Deposit of any unsuccessful Qualified Bidders (except for LCS) will be returned within fifteen (15) days after the Sale Hearing or upon the permanent withdrawal of the proposed Sale of the Purchased Assets.   The Good Faith Deposit of LCS shall be returned in accordance with the terms of the Stalking Horse APA.

**<u>Exhibit B - Contract Assumption Notice</u>**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
<u>JACKSONVILLE DIVISION</u>

| | | |
|---|---|---|
| In re | ) | |
| | | |
| LIFE CARE ST. JOHNS, INC., | ) | Case No.:  3:16-bk-1347-JAF |
| a Florida not-for-profit corporation | | |
| doing business as GLENMOOR,[4] | ) | Chapter 11 |
| | | |
| Debtor. | ) | |
| | | |
| _____ | ) | |

**NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT
<u>OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

**PLEASE TAKE NOTICE THAT** the above-captioned debtor ("Glenmoor") filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division (the "Bankruptcy Court") on April 11, 2016 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE THAT** on **April 11, 2016**, in connection with the proposed sale (the "Sale") of substantially all of Glenmoor's assets (except the 11 acre undeveloped parcel adjacent to the operational facilities) (the "Purchased Assets") to LCS Glenmoor, LLC ( "LCS") or any other Successful Bidder for the Purchased Assets at an auction for the Purchased Assets (the "Auction"), Glenmoor filed a motion [Docket No. 9] (the "Sale Motion") seeking, among other things, the entry of an order approving (a) bidding procedures governing the Sale, (b) the form of asset purchase agreement for the Purchased Assets, (c) payment of a break-up fee and expense reimbursement to LCS in certain

---

[4]   The Federal Employer Identification Number for the Debtor is 59-3474627.  The address of the Debtor is 235 Towerview Drive, St. Augustine, Florida, 32092.

instances, including if LCS is not the Successful Bidder at the Auction, (d) the form and manner of notices; and (e) procedures relating to the assumption and assignment of executory contracts and unexpired leases in connection with the Sale.

PLEASE TAKE FURTHER NOTICE THAT on April ____, 2016, the Bankruptcy Court entered an order [Docket No. _____] (the "Bidding Procedures Order") granting certain of the relief sought in the Sale Motion, including, among other things, approving (a) the bidding procedures (the "Bidding Procedures") for the Sale of the Purchased Assets and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures").  Copies of the Bidding Procedures Order (which incorporates the Assumption and Assignment Procedures) and the Bidding Procedures are enclosed herein.

PLEASE TAKE FURTHER NOTICE THAT upon the closing of the Sale, in accordance with the terms of the Stalking Horse APA, Glenmoor may assume and assign to LCS or any other Successful Bidder the executory contracts and unexpired leases (collectively, the "Assumed Contracts") set forth on **Exhibit 1** hereto.  In addition, the cure amounts, if any, necessary for the assumption and assignment of the Assumed Contracts (the "Cure Amounts") are set forth on **Exhibit 1**.

YOU ARE RECEIVING THIS NOTICE BECAUSE LCS HAS IDENTIFIED YOU AS A COUNTERPARTY TO AN ASSUMED CONTRACT.  Under the terms of the Assumption and Assignment Procedures, LCS, or the Successful Bidder may remove contracts from the list of Assumed Contracts until the earlier of Closing or until three (3)

Business Days following entry of a final order determining all Cure Amounts and adequate assurance (if any) required for such contract..

**Obtaining Additional Information**

Additional copies of the Bidding Procedures Order, the Bidding Procedures and any other related documents are available upon request to American Legal Claims Services, LLC, Glenmoor's noticing agent, by visiting their website at www.americanlegal.com/Glenmore2 or www.americanlegal.com/lcsj.

**Important Dates and Deadlines**

The deadline to submit a Qualified Bid is **May 30, 2016**.

The deadline to file an objection with the Bankruptcy Court to the entry of an order approving the sale (the "Sale Order") is **May 30, 2016** (the "Sale Objection Deadline").

The deadline to file an objection to the proposed Cure Amounts, or to the proposed assumption and assignment of the Assumed Contracts, is **May 30, 2016**.

The Auction shall be conducted **June 2, 2016** at **1:30 p.m.** before and at the direction of the Honorable Jerry A. Funk, United States Bankruptcy Judge, in the Bryan Simpson United States Courthouse, Room 4D, 300 North Hogan Street, Jacksonville, Florida 32202, if one or more Qualified Bids are received by the Bid Deadline.

A hearing (the "Sale Hearing") to consider the proposed Sale will be held on **June 2, 2016** at **1:30 p.m.**, immediately following the Auction, in the Bryan Simpson United States Courthouse, Room 4D, 300 North Hogan Street, Jacksonville, Florida 32202

**Filing Assumption and Assignment Objections**

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of an Assumed Contract, including any objection relating to the Cure Amount and/or adequate assurance of future performance, must: (a) be in writing; (b) state with specificity the nature of such objection and alleged Cure Amount, including applicable and appropriate documentation in support of such alleged Cure Amount; (c) comply with the Federal Rules of Bankruptcy Procedure; and (d) be filed with the Bankruptcy Court and served so as to be actually received on or before the Sale Objection Deadline of **May 30, 2016**.

Any objections will be considered at the Sale Hearing, or as soon thereafter as counsel may be heard, and must be served on the following parties:

Richard R. Thames, Esq.
Thames Markey & Heekin, P.A.
50 North Laura Street, Suite 1600
Jacksonville, Florida  32202

Daniel Bleck, Esq.
Mintz Levin Cohn Ferris Glovsky and Popeo PC
One Financial Center
Boston, Massachusetts 02111

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION: ANY COUNTERPARTY TO AN ASSUMED CONTRACT WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF AN ASSUMED CONTRACT IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER AND THE ASSUMPTION AND ASSIGNMENT**

**PROCEDURES SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON EXHIBIT 1, INCLUDING ASSERTING ADDITIONAL CURE AMOUNTS WITH RESPECT TO THE ASSUMED CONTRACT RELATING TO ANY PERIOD PRIOR TO THE TIME OF ASSUMPTION AND ASSIGNMENT.**

75.9